UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRENDA L. MELENDEZ, *as Parent and Natural Guardian of J.C.*, BRENDA L. MELENDEZ, *Individually*,

Plaintiffs,

- against -

NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.

<u>OPINION AND ORDER</u>

19 Civ. 02928 (ER)

RAMOS, D.J.:

      Plaintiff Brenda L. Melendez ("Melendez"), the parent of J.C., a nine-year-old boy with a serious brain injury, seeks injunctive relief pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and related state law, against Defendant New York City Department of Education (the "DOE"). J.C. attended the International Academy of Hope ("iHope") before enrolling at the International Institute for the Brain ("iBrain"). On November 13, 2018, DOE denied Melendez's request for pendency at iBrain. Melendez seeks an injunction vacating this pendency order and ordering that the DOE fund J.C.'s pendency placement at iBrain for the 2018-2019 school year until a final adjudication on Plaintiff's due process complaint against DOE has been resolved.

      For the reasons stated below, the Court GRANTS the preliminary injunction in part.

**I.**     **Statutory and Legal Background**

      Congress passed the IDEA "to ensure that all children with disabilities have available to them a *free appropriate public education* that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and

independent living." 20 U.S.C. § 1400(d)(1)(A) (emphasis added). It defines free appropriate public education ("FAPE") as "appropriate preschool, elementary school, or secondary school education," "provided at public expense, under public supervision and direction, and without charge," and "in conformity with the individualized education program ['IEP'] required under section 1414(d) of this title." *Id*. § 1401(9). The statute further mandates that the FAPE "meet the standards of the State educational agency." *Id.*

As part of the child's FAPE, "the IDEA provides for the creation of an IEP." *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 481 (2d Cir. 2002). The IEP includes, among other things, "a statement of the child's present levels of academic achievement and functional performance," "a statement of measurable annual goals," and "a description of how the child's progress toward meeting the annual goals . . . will be measured." 20 U.S.C. § 1414(d)(1)(A)(i).

"Congress repeatedly emphasized throughout the Act the importance and indeed the necessity of parental participation in both the development of the IEP and any subsequent assessments of its effectiveness." *Honig v. Doe*, 484 U.S. 305, 311 (1988). As a result, states must allow parents "to seek review of any decisions they think inappropriate." *Id.* at 312.

In New York, parents may request an "impartial due process hearing" before an impartial hearing officer ("IHO"). N.Y. Educ. Law § 4404(1). If they are unsatisfied with the IHO's decision, they can appeal the decision to a state review officer ("SRO"). *Id.* § 4404(2). "The SRO's decision is final[] and concludes the state administrative review." *Schutz*, 290 F.3d at 481. "Upon issuance of a final administrative decision, however, a dissatisfied party has the right to bring a civil action in either federal or state court pursuant to the IDEA." *Id.*

The IDEA further provides that, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the *then-current educational placement* of the child." 20 U.S.C. § 1415(j) (emphasis added). To determine a child's "then-current educational placement," Second Circuit courts consider: (1) "the placement described in the child's most recently implemented IEP; (2) the operative placement actually functioning at the time when the stay put provision of the IDEA was invoked; or (3) the placement at the time of the previously implemented IEP." *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015) (internal quotation marks and citations omitted).

Under Second Circuit precedent, "the term 'educational placement' refers only to the general type of educational program in which the child is placed." *Concerned Parents & Citizens for the Continuing Ed. at Malcolm X (PS 79) v. New York City Bd. of Educ.*, 629 F.2d 751, 753 (2d Cir. 1980). Indeed, "[t]he IDEA's pendency provision does not entitle a disabled child to keep receiving services from the exact same service providers while his proceedings are pending; instead, it only entitles the child to receive the same general type of educational program." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 171 (2d Cir. 2014). Furthermore, "[i]t is up to the school district to decide how to provide that educational program, at least as long as the decision is made in good faith." *Id.* If, however, the school district offers to provide pendency services and the parents enroll their child in a private school anyway, "it is within the district court's authority to order [the school district] to reimburse [the student's] parents for pendency services up to the amount that it would have cost [the school district] itself to provide the required pendency services." *Id.* at 172. Importantly, parents can invoke the stay-put provision to maintain even just some of the services that their child receives at a public

3

school. *E. Lyme Bd. of Educ.*, 790 F.3d at 453-54 (2d Cir. 2015) (granting a student pendency funding for some services related to the student's IEP even though the school board "argue[d] that the Parent should not be permitted to obtain reimbursement for tuition at [a private school] by unilaterally enrolling the Student there").

In light of this precedent, some courts within this District have held that "parents may move their child from a previously approved private facility to another private facility and still receive 'stay put funding' as long as the new facility has the same 'general type of educational programming' as the approved facility." *Navarro Carrilo v. New York City Dep't of Educ.*, No. 19 Civ. 2944 (CM), 2019 WL 2511233, at *4 (S.D.N.Y. June 13, 2019) (vacating an IHO's decision and requiring DOE to provide stay-put funding for a student at iBrain because her general educational programming was substantially similar to the programing that she received at iHope); *see also Soria v. New York City Dep't of Educ.*, No. 19 Civ. 2149 (AT), 2019 WL 3715057, at *3-4 (S.D.N.Y. Aug. 7, 2019) (finding that a pendency placement at iBrain was appropriate where it was substantially similar to the program at iHope); *Abrams v. Carranza*, No. 19 Civ. 4175 (AJN), 2019 WL 2385561, at *2 (S.D.N.Y. June 6, 2019) (enforcing a pendency order that found "the program available at iBRAIN substantially similar to the program available at iHOPE and require[ed] the DOE to fund [the student's] placement at iBRAIN"); *Cruz v. New York City Dep't of Educ.*, No. 18 Civ. 12140 (PGG), 2019 WL 147500, at *11 (S.D.N.Y. Jan. 9, 2019) (vacating an IHO's decision and remanding the case to the IHO to decide "whether the educational placement provided by the Brain Institute [was] substantially similar to the placement provided by Hope Academy in the 2017-18 school year").

At least two courts, however, have come to the opposite conclusion. In *de Paulino v. New York City Department of Education*, the court denied an application for a preliminary

injunction and then a motion for reconsideration because "allowing parents to unilaterally move a student from his or her proper pendency placement simply because the parents allege their preferred placement is 'substantially similar' runs afoul of the 'stay put' provision's entire purpose." No. 19 Civ. 222 (GBD), 2019 WL 2498206, at *3 (S.D.N.Y. May 31, 2019). And in *Neske v. New York City Department of Education*, the Court found that plaintiffs had failed to state a claim because "§ 1415(j) does not require the City to fund a student's attendance at a preferred, 'substantially similar' school, at least not when the existing school is concededly able to service the student's IEP." 19 Civ. 2933 (VEC), 2019 WL 3531959, at *7 (S.D.N.Y. Aug. 2, 2019) (citing *de Paulino*, 2019 WL 2498206, at *3)).

Three of the foregoing district court decisions are currently on appeal. The student appealed the denial of its request for preliminary injunction in *de Paulino*, *see* Notice of Appeal, No. 19 Civ. 222 (GBD), ECF No. 90 (S.D.N.Y. June 3, 2019), and the DOE appealed the grant of preliminary injunction in both *Navarro Carrilo*, Notice of Appeal, No. 19 Civ. 2944 (CM), ECF No. 21 (S.D.N.Y. June 18, 2019), and *Soria*, Notice of Interlocutory Appeal, No. 19 Civ. 2149 (AT), ECF No. 32 (S.D.N.Y. Aug. 16, 2019). The court in *Navarro Carrilo* stayed the case, pending the Second Circuit's decision. Order Granting Say Pending Appeal, No. 19 Civ. 2944 (CM), ECF No. 29 (S.D.N.Y. June 26, 2019). The court in *Soria* declined to stay the case. Order Denying Letter Motion to Stay, No. 19 Civ. 2149 (AT), ECF No. 36 (S.D.N.Y. Aug. 21, 2019).

## II. Statement of Relevant Facts

Melendez is the parent and natural guardian of J.C. Doc. 13 at 1. J.C. is a nine-year-old boy with a brain injury and global developmental impairments. *Id.* As a result, J.C. cannot walk or speak and requires a high degree of attention, instruction, and intervention. *Id.*; *see also* Doc.

13, Declaration of Karl Ashanti ("Ashanti Decl."), ¶ 2. On August 29, 2016, the DOE created an IEP for J.C. Doc. 12, Ex. A (Individualized Education Program for J.C.). For the 2016-2017 school year, he enrolled in iHope and the DOE funded his placement. Ashanti Decl, ¶ 4.

On April 1, 2017, iHope proposed an IEP for the 2017-2018 school year. Doc. 12, Ex. B (iHope IEP).[1] For the 2017-2018 school year, J.C. attended iHope and received the services recommended by iHope in the 2017-2018 proposed IEP. Ashanti Decl. ¶ 5.

On November 3, 2017, Melendez filed a due process complaint against the DOE regarding the 2017-2018 school year and sought pendency funding at iHope on the grounds that the current placement was substantially similar to the program identified in the last agreed upon IEP, dated August 29, 2016. Doc. 12, Ex. C (Order on Pendency) at 2. The DOE did not appear for the hearing, which was held on November 14, 2017.[2] *Id.* On January 3, 2018, the IHO granted the request for pendency funding because "there is no dispute that the student's last agreed upon placement, funded by the Department, . . . is being substantially implemented at iHope." *Id.* at 4. More than five months later, on May 31, 2018, the IHO denied Melendez's due process complaint and Melendez appealed that decision to the SRO. Ashanti Decl. ¶ 9.

On June 21, 2018, while the appeal was still pending, Melendez notified the DOE that she would enroll her child in iBrain for the 2018-2019 school year because the child's needs were "multifaceted and complex, and to date, the DOE has not offered [J.C.] a program or placement that can appropriately address his educational needs for school year 2018-2019." Doc. 12, Ex. E (10-day Notice). J.C. was then enrolled in iBrain. Ashanti Decl. ¶ 13. On July 9, 2018, Melendez filed a due process complaint alleging that the DOE failed to offer the child a

---

[1] It is unclear from the record whether DOE agreed to this IEP.

[2] The record is silent as to why the DOE failed to appear for this hearing.

6

FAPE for the 2018-2019 school year. Doc 12, Ex. G (Due Process Complaint). She also sought pendency funding and services for the 2018-2019 school year at iBrain based on the August 29, 2016 IEP. *Id.* at 1–2.

The IHO held hearings on J.C.'s pendency placement on August 17, September 17, and October 30 of 2018. Ashanti Decl. ¶ 17. Both parties agreed that the January 3, 2018 pendency order was the basis for J.C.'s pendency. *Id*. However, they interpreted the pendency order differently. The DOE explained that the January 3, 2018 pendency order found that "the last agreed upon placement [wa]s the District's IEP" and that it "was being substantially implemented at the unilateral placement which was iHope at the time." Doc. 12, Ex. H (Hearing Trans.) at 95:19–23. The student's counsel interpreted the order more broadly and stated that the order found that pendency was "a private school 6:1:1 class, with that placement as being at iHope." *Id.* at 112:4–9.

On November 13, 2018, the IHO denied J.C.'s request for pendency funding at iBrain for the 2018-2019 school year because "[t]here is no evidence in the record that the parent ever requested any pendency relief other than funding for her unilateral placement at iBrain" and because "[t]he parent has not cited any legal authority for the proposition that a parent can unilaterally change a student's placement, and obtain public funding for that placement during the pendency of due process proceedings." Doc. 12, Ex. I (Interim Order on Pendency) at 4–5. The IHO specifically rejected Melendez's argument that "the student is entitled to funding at iBrain, as it provides a program that is identical to (or substantially similar to) the iHOPE program." *Id.* at 5. It rejected this argument because it read *T.M. ex rel. A.M.* to stand for the proposition that "it is the school district's prerogative to decide how to provide the pendency

7

program, provided the decision is made in good faith." 752 F.3d at 171. As a result, the IHO did not make any findings as to whether the two programs were substantially similar.

On March 9, 2019, the parties entered into an agreement to settle the appeal from the IHO's May 31, 2018 due process decision, filed when J.C. was enrolled in iHope. Doc. 12, Ex. D (Stipulation of Settlement).[3] The settlement required the DOE to pay $85,000 for J.C.'s tuition expenses and related services costs for the 2017-2018 year, provided that "[t]his Agreement shall not be relied upon by any party to indicate, establish, or support the position that the [iHope] School was, or comprises in whole or in part, the Student's educational program for purposes of the 'pendency' or 'stay put' provisions of the Individuals with Disabilities Education Act ('IDEA')." *Id.* ¶ 10.

On April 2, 2019, Melendez filed a complaint against the DOE for violating J.C.'s rights under the IDEA and related state law by denying him pendency funding at iBrain for the 2018-2019 school year. Doc. 1. Almost two months later, on May 30, 2019, Melendez filed a motion for a preliminary injunction, Doc. 11, and the Court held a hearing on July 24, 2019.

**III.    Discussion**

**A.     Subject Matter Jurisdiction**

The DOE argues that this Court lacks subject matter jurisdiction because Plaintiff lacks standing and because she has not exhausted administrative remedies. The Court addresses each of these arguments in turn.

---

[3] As part of the settlement, the Parent signed a release of her claims on January 17, 2019. Stipulation of Settlement at 8–9.

1.  **Standing**

Standing to sue under Article III is a "threshold question in every federal case." *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 103 (2d Cir. 2018) (internal quotations and citation omitted). "To establish Article III standing, a plaintiff must demonstrate:

> (1) injury-in-fact, which means "an actual or imminent" and "concrete and particularized" harm to a "legally protected interest"; (2) causation of the injury, which means that the injury is "fairly traceable" to the challenged action of the defendant; and (3) redressability, which means that it is "likely," not speculative, that a favorable decision by a court will redress the injury.

*Id.* (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61 (1992)). The DOE's argument centers on the first and second prongs—the injury-in-fact and causation requirements.

**a.    Injury-in-Fact**

To establish injury in fact, a plaintiff must show that she suffered "an invasion of a legally protected interest" that is "concrete" (which means "it must actually exist"), "particularized," and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). The violation of statutory rights can give rise to injury in fact. *See Heldman v. Sobol*, 962 F.2d 148, 154 (2d Cir. 1992) ("Congress may create a statutory right the alleged violation of which constitutes injury in fact."). Second Circuit courts have specifically recognized that denial of "a procedural right created by the IDEA . . . constitutes an injury sufficient to satisfy the standing requirement." *S.W. v. New York City Dep't of Educ.*, 646 F. Supp. 2d 346, 358 (S.D.N.Y. 2009). For example, the denial of a FAPE or of an impartial due process hearing about IDEA-related concerns constitutes an injury in fact for standing purposes. *Id.*; *Heldman*, 962 F.2d at 154–56.

DOE argues that Melendez has not suffered any injury because J.C. has a pendency placement at iHope and because the fact that Melendez chose to reject J.C.'s identified stay-put

placement by unilaterally placing him at iBrain does not constitute an injury. Doc. 20 at 20. DOE further argues that there is no imminent interruption of J.C.'s education or any indication that iBrain has demanded payment. *Id.* at 20–21. Melendez on the other hand, argues that the DOE is violating J.C.'s statutory entitlement to a pendency placement and that this constitutes an injury in fact.

The Court agrees with Melendez. At issue in this case is DOE's alleged violation of the "stay put" provision of the IDEA. The "stay put" provision of the IDEA creates a procedural right. *See A.S. ex rel. P.B.S. v. Bd. of Educ. for Town of W. Hartford*, 47 F. App'x 615, 616 n.2 (2d Cir. 2002); *Cruz*, 2019 WL 147500, at *5. It follows, then, that violation of the "stay put" provision of IDEA creates an injury in fact that confers standing.

In recent cases, with facts nearly identical to those in this case, at least four courts within this District have concluded that plaintiff parents had standing to pursue a claim for denial of adequate pendency placement.

In *Navarro Carrilo*, the plaintiffs, like Melendez, unilaterally transferred their son from iHope to iBrain, and then filed a due process complaint against the DOE seeking payment for the full cost of tuition at iBrain. 384 F. Supp. 3d 441. In the underlying pendency hearing, the IHO denied pendency at iBrain. *Id.* at 451–2. The plaintiffs did not appeal the decision to the SRO but instead filed an application with the Southern District of New York for a preliminary injunction requiring the DOE to pay the student's tuition at iBrain, because it was his proper pendency. As here, the DOE claimed that the plaintiffs lacked standing because they did not suffer an injury in fact. The court, however, disagreed and found that the plaintiffs had "standing because they ha[d] suffered an injury in fact by virtue of being denied a ruling that iBrain was the child's pendency." *Id.* at 455.

Other courts within this District have come to similar conclusions. In *Cruz*, the court found that a parent suffered a violation of a procedural right pursuant to 20 U.S.C. § 1415(j) because, after transferring the child from iHope to iBrain and unsuccessfully seeking a pendency at iBrain, the "[p]laintiff was . . . denied what she contends is the pendency placement that the law requires." 2019 WL 147500, at *6. Along the same lines, in *de Paulino*, the court found that a parent had "alleged injury in fact in the form of the alleged violation of her son's procedural right to a pendency placement pursuant to the IDEA's 'stay-put' provision" after the parent unilaterally transferred the student from iHope to iBrain and failed to receive pendency funding from the DOE for iBrain. 2019 WL 1448088, at *3.[4]

At least one court within this District, however, has come to a different conclusion. In *Cohen v. New York City Dep't of Educ.*, another iHope to iBrain transfer case, the IHO concluded that iBrain *was* the appropriate pendency placement for the student during the ongoing due process proceedings, but the DOE refused to provide funding until the SRO affirmed the IHO's decision. No. 18 Civ. 11100 (JMF), 2018 WL 6528241 (S.D.N.Y. Dec. 12, 2018). In that case, the parents filed a case in this District to compel DOE to comply with the pendency order. *Id.* The court found that the plaintiffs had not suffered an injury in fact because, although the plaintiffs claimed that the student faced the imminent risk of expulsion due to unpaid tuition bills, the plaintiff had provided no evidence that iBrain requested tuition, or even threatened expulsion. *Id.* at *1.

---

[4] In addition, that court found that the plaintiff also had standing "because she [was] liable to iBRAIN for [the student]'s tuition and costs if she does not secure funding from the district." 2019 WL 1448088, at *4. The result in *Neske v. New York City Department of Education* was substantially the same. There, the Court found that the plaintiffs had standing because the "stay-put" provision created a procedural right and because their risk of concrete harm—in this case, the "concrete interest in avoiding out-of-pocket payments for their child's tuition and related costs"—was sufficient for that right to confer standing. 19 Civ. 2933, 2019 WL 3531959 at *3–4 (S.D.N.Y. Aug. 2, 2019). The Court notes, however, that Melendez's procedural injury—being denied a ruling that iBrain is the proper pendency—is sufficient to confer standing. *See Navarro* 384 F. Supp. 3d at 455; *Cruz*, 2019 WL 147500, at *6.

This case is closer to *Navarro Carrilo*, *Cruz* and *de Paulino* than to *Cohen* because the IHO in the case at bar denied Plaintiff's request for pendency. As a result, the Court finds that Plaintiff suffered an injury in fact by being denied a ruling that iBrain was J.C.'s pendency.[5]

**b.     Causation**

"The traceability requirement for Article III standing means that the plaintiff must 'demonstrate a causal nexus between the defendant's conduct and the injury.'" *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) (quoting *Heldman*, 962 F.2d at 156). A causal nexus is "most easily shown" by a "direct relationship between the plaintiff and defendant with respect to the conduct at issue," but indirectness is not fatal "because the 'fairly traceable' standard is lower than that of proximate cause." *Id.* "[T]he fact that there is an intervening cause of the plaintiff's injury may foreclose a finding of proximate cause but is not necessarily a basis for finding that the injury is not 'fairly traceable' to the acts of the defendant." *Id.* at 92.

DOE argues that Melendez has not alleged facts establishing that the injury is traceable to the DOE. Doc. 20 at 20. DOE suggests that because Melendez was responsible for moving J.C. from iHope to iBrain, no DOE action has caused the injury. But the injury here is the failure to find that iBrain is the proper pendency placement for J.C., and that decision was made by the DOE and affirmed by the hearing officer. Thus, the hearing officer's decision that the pendency placement was iHope was clearly traceable to the DOE. *Navarro Carrilo*, 384 F. Supp. 3d at 455–56 (finding injury traceable to DOE on nearly identical facts); *Cruz*, 2019 WL 147500, at *7 (same).

---

[5] Defendant also argues that Plaintiff's claim is moot because the 2018-2019 school year has ended. Doc. 20, 15. This may be true, but the due process claim remains unresolved and DOE continues to deny that the pendency placement is proper, as well as J.C.'s claim to pendency reimbursement. Doc. 20 at 18-19.

**2. Exhaustion**

DOE next argues that the Court may not hear this case because Melendez has failed to exhaust the administrative remedies by not appealing the IHO's decision to the SRO. Doc. 20 at 21–22. The Court does not agree.

The IDEA contains an exhaustion requirement such that failure to exhaust "deprives a court of subject matter jurisdiction." *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002). But the exhaustion requirement is "not an inflexible rule." *Murphy v. Arlington Centr. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002) (citing *Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d Cir. 1987)). Exhaustion is not required when "(1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." *Id.*

In *Murphy*, the parents went directly to the district court on the issue of pendency while seeking an administrative ruling on the appropriate placement for their child. *Id.* at 198. The Second Circuit found that the district court had jurisdiction, despite the parents' failure to exhaust administrative remedies. *Id.* at 199–200. Then-Judge Sotomayor held that a plaintiff need not exhaust a "stay put"-related claim because, "as a practical matter, access to immediate interim relief is essential for the vindication of this particular IDEA right." *Id.* at 200. "The administrative process is 'inadequate' to remedy violations of [the 'stay put' provision] because, given the time-sensitive nature of the IDEA's stay-put provision, 'an immediate appeal is necessary to give realistic protection to the claimed right." *Id.* at 199 (internal citations omitted). "Since the purpose of the stay-put provision is to keep the child in an existing placement until all proceedings—administrative and judicial—have run their course, there is no evident reason why

administrative proceedings should have to be recommenced to that end." *E. Lyme Bd. of Educ.*, 790 F.3d at 455.

DOE argues that the exhaustion exception, as articulated by *Murphy*, does not apply here because, again, "Plaintiff is the one who interrupted J.C.'s pendency by moving him from iHOPE to iBRAIN." Doc. 20 at 22. This argument, however, goes to the merits of Plaintiff's claim—not the justification for the exhaustion exception. The Court therefore finds that the exhaustion exception does apply.

**B.     Melendez's Claim for Injunctive Relief**

Melendez seek a preliminary injunction vacating the IHO's November 13, 2018 pendency order and ordering the DOE to fund J.C.'s pendency placement at iBrain for the 2018-2019 school year, or until a final adjudication on her due process complaint is complete.

**1.      Preliminary Injunction Standard**

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing,* carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (per curiam) (internal quotation marks and citation omitted). Generally, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). However, the stay-put provision "is, in effect, an automatic preliminary injunction" that "substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships." *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982); *see also*

*Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692, 696 (S.D.N.Y. 2006) ("Pendency has the effect of an automatic injunction, which is imposed without regard to such factors as irreparable harm, likelihood of success on the merits, and a balancing of the hardships.").

DOE argues that the general injunction standard applies in the instant case because "Plaintiff has not demonstrated that the school at which the student currently attends is in fact the student's pendency placement." Doc. 20 at 17. At least one court in this district has suggested that this argument may be persuasive. In dicta,[6] the court in *Neske v. New York City Department of Education* stated that "Section 1415(j) is inapplicable when, as here, there is no meaningful threat to the child's learning experience," referring to the fact that the student's "original placement"—at iHOPE—"remain[ed] an available option." 2019 WL 3531959, at *5, * 8 n.7. In support of this proposition, the court cited *Fiallos v. New York City Dep't of Educ.*, No. 19 Civ. 334, Dkt. 36 at 22 (S.D.N.Y. May 9, 2019), and *Cohen*, 2018 WL 6528241, at *2.

However, as other courts have noted, *Cohen*—whose preliminary injunction analysis was also dicta—did not "overturn well settled law that irreparable harm need not be shown to obtain injunctive relief regarding pendency." *Cruz*, 2019 WL 147500, at *9. Rather, courts have interpreted *Cohen* as making the "commonsense observation that plaintiffs—having prevailed before the hearing officer on pendency, and having not received any threat of expulsion or demand for tuition payments—had not shown that any 'true danger exists' that would justify injunctive relief." *Id.*; *Navarro Carrilo*, 267 F. Supp. 3d at 454-55. Plaintiffs were in a similar posture in *Fiallos*, where there was "a decision on the merits, which determine[d] that iBrain [was] in fact an appropriate placement for the child," and where no tuition payments remained in dispute. *See* No. 19 Civ. 334, Dkt. 36 at 14-18 (S.D.N.Y. May 9, 2019). Given these

---

[6] The court in *Neske* was deciding a motion to dismiss, not a motion for preliminary injunction. 2019 WL 3531959, at *1.

circumstances, the court in that case found that "there is no realistic possibility that the pendency placement sought by the plaintiff, namely her placement at iBrain, for the entire period of which she has been placed at iBrain is in any sense in jeopardy." *Id.* at 20.

Unlike in both *Cohen* and *Fiallos*, the issue in this case is not merely about payment, but rather about the proper pendency placement itself, as emphasized by DOE's argument that iHope, not iBrain, is the proper placement. Doc. 20 at 17-18. The automatic injunction standard, therefore, is appropriate. "Because this Court's enforcement of IDEA's pendency provision is automatic and does not require a showing of irreparable harm, likelihood of success on the merits, [or] a balancing of the hardships, all that remains is for me to determine what [the student's] current educational placement is." *M.G. v. New York City Dep't of Educ.*, 982 F. Supp. 2d 240, 247 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).

### 2. Standard of Review

In reviewing an IHO's decision, the Court "must engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007) (internal quotation marks and citation omitted). This independent review, however, "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 240 (2d Cir. 2012) (internal quotation marks and citations omitted). "In deciding what weight is due to an IDEA administrative decision, the analysis often will hinge on the kinds of considerations that normally determine whether any particular judgment is persuasive," including "the quality and thoroughness of the reasoning, the type of determination under review, and whether the decision is based on the administrative body's familiarity with the evidence and the witnesses." *Reyes ex*

16

*rel. R.P. v. New York City Dep't of Educ.*, 760 F.3d 211, 218 (2d Cir. 2014) (internal quotation marks and citations omitted). However, an IHO's interpretation of a purely legal question receives no deference. *Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692, 696 (S.D.N.Y. 2006) ("A court accords no particular deference to an SRO on pure questions of law."); *Carmel Cent. Sch. Dist. v. V.P. ex rel. G.P.*, 373 F. Supp. 2d 402, 408 (S.D.N.Y. 2005) ("[A]n SRO's determination of a pure question of law is not subject to deference."), *aff'd*, 192 F. App'x 62 (2d Cir. 2006); *Navarro Carrilo*, 384 F. Supp. 3d at 459 (same). *But see M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 243–44 (2d Cir. 2012) (rejecting the argument that the Court must "review legal conclusions of administrative decisions *de novo* without giving due weight to the administrative decisions" because "subsequent decisions of this Court favor a different approach").

### 3. Analysis

Melendez makes two arguments for why J.C. should receive pendency funding at iBrain.[7] First, she argues that J.C.'s last agreed upon placement was iHope for the 2017-2018 school year and J.C.'s educational program at iBrain for the 2018-2019 school year was substantially similar to the educational program that he received at iHope for the 2017-2018 school year. Doc. 13 at 12–14. DOE responds that iHope is J.C's pendency placement because the IHO so found in its January 3, 2018 order. Doc. 20 at 9. Furthermore, DOE claims that allowing J.C.'s parent to move him from iHope to iBrain "is inconsistent with the intent of the IDEA's pendency provision, the purpose of which is to maintain the student's educational status quo." *Id.* at 12. In

---

[7] Plaintiff also claims that the March 9, 2019 settlement agreement provides an alternative ground for pendency at iBrain. Doc. 13 at 16–17. That agreement, however, specifically provides that it "shall not be relied upon by any party to indicate, establish, or support the position that the School was, or comprises in whole or in part, the Student's educational program for purposes of the 'pendency' or 'stay put' provisions of the [IDEA]." Stipulation of Settlement ¶ 10.

the alternative, Melendez contends that J.C. is entitled to pendency placement at iBrain because it is his "operative placement," Doc. 13 at 14–16, which requires the Court to look at "the operative placement actually functioning at the time when the stay put provision of the IDEA was invoked." *E. Lyme Bd. of Educ.*, 790 F.3d at 452.

The Second Circuit has twice held that it is within the district court's power to require a school district to pay some pendency funding even though the parents unilaterally enrolled the student in private school. In *T.M. ex rel. A.M.*, the Second Circuit held, "it is within the district court's authority to order [the school district] to reimburse [the student's] parents for pendency services up to the amount that it would have cost [the school district] itself to provide the required pendency services," in part because "[t]hat remedy would leave [the school district] no better and no worse off than it would have been if [the student's] parents had accepted for [the student] the pendency services that [the school district] was required to provide." 752 F.3d at 172. Along the same lines, in *E. Lyme Bd. of Educ.*, the Second Circuit found that a district had to provide pendency funding for related services because it had agreed to do so in the student's last IEP, even though the student's parents unilaterally enrolled the student in private school. 790 F.3d at 453.

Here, the DOE created an IEP for J.C. on August 29, 2016. *See* Individualized Education Program for J.C. On January 3, 2018, an IHO found that the IEP had been substantially implemented at iHope for the 2017-2018 school year. Order on Pendency at 4. As a result, J.C.'s parent is entitled to reimbursement for the services that J.C. received at iBrain to the extent that those services are substantially similar to the services that he received at iHope for the 2017-

2018 school year. *T.M. ex rel. A.M.*, 752 F.3d at 171–72. If J.C. receives additional services that are not substantially similar, Melendez is not entitled to reimbursement for those services.[8]

However, as the court found in *Cruz*, "this Court cannot rule that the Brain Institute is the proper pendency placement." 2019 WL 147500, at *10. It is not this Court's role to make findings as to whether the two programs are substantially similar. This is a question better reserved for the IHO. *See Gagliardo*, 489 F.3d at 112–13 (finding that "federal courts reviewing administrative decisions must give due weight to these proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy" (internal quotation marks and citations omitted)). "In an IDEA case, a court may remand a proceeding when it needs further clarification or does not have sufficient guidance from the administrative agencies. A remand is appropriate when the educational expertise of the IHO and SRO is necessary to resolve an issue." *Cruz*, 2019 WL 147500, at *10 (internal quotation marks and citations omitted). Such is the case here. The Court concludes that a remand is necessary to determine to what extent the services J.C. received at iBrain are substantially similar to those he received at iHope.

As to Melendez's alternative operative placement argument, the Court finds that reliance on the operative placement provision is unnecessary. Courts typically rely on the "operative placement" factor only when there is no previously-implemented IEP to guide the determination of a child's "current educational placement." *Avaras v. Clarkstown Cent. Sch. Dist.*, No. 15 Civ.

---

[8] DOE correctly notes that the Second Circuit has held that "[w]hen [a student's] parents rejected [a school district's] offer to provide pendency services directly for a [school] year, they took responsibility for the cost of obtaining those services from private providers." *T.M. ex rel. A.M.*, 752 F.3d at 172. But DOE fails to appreciate the nature of this risk. Indeed, as the Second Circuit held in that very case, the parents only bear the risk of paying the difference between what the school district would have paid under the last IEP and what the parents in fact paid for the services that the student received, even though the student received those services at a private school. *Id.*

9679 (NSR), 2018 WL 4103494, at *6 (S.D.N.Y. Aug. 28, 2018) (relying on "operative placement" to determine pendency when the "first and third factors of the [*East Lyme Board of Education*] test [were] equally inapplicable"). Such is not the case here. J.C. had an un-appealed decision that found that placement at iHope provided him with a FAPE, that the DOE had to fund his tuition and related services at iHope for the 2017–18 school year, and that the iHope-proposed IEP outlined the necessary requirements for his education. It follows that, in this case, the more appropriate course is to focus on the substantial similarity between the programs at iHope and iBrain.

**IV. Conclusion**

Plaintiff's application for a preliminary injunction is granted to the extent that the IHO's November 13, 2018 Interim Order of Pendency is vacated. The hearing officer will issue a revised Interim Order of Pendency addressing, among other things, what services provided by iBrain were substantially similar to those provided by iHope in the 2017-18 school year and the difference between the cost of those services at iHope and iBrain. Plaintiff's application for preliminary injunction is otherwise denied.

SO ORDERED.

Dated: October 15, 2019
      New York, New York

                                                                                                  Edgardo Ramos, U.S.D.J.