UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRENDA L. MELENDEZ, *individually and as parent and natural guardian of J.C.*,

        Plaintiff,

– *against* –

NEW YORK CITY DEPARTMENT OF EDUCATION,

        Defendant.

**OPINION & ORDER**

19 Civ. 2928 (ER)

---

BRENDA L. MELENDEZ, *individually and as parent and natural guardian of J.C.*,

        Plaintiff,

– *against* –

CHANCELLOR RICHARD CARRANZA, NEW YORK CITY DEPARTMENT OF EDUCATION, and NEW YORK STATE EDUCATION DEPARTMENT,

        Defendants.

19 Civ. 8726 (ER)

---

BRENDA L. MELENDEZ, *individually and as parent and natural guardian of J.C.*,

        Plaintiff,

– *against* –

RICHARD CARRANZA and NEW YORK CITY DEPARTMENT OF EDUCATION,

        Defendants.

20 Civ. 823 (ER)

|                                                                                                                                                                                                                                                                                                                      |                        |
| -------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- | ---------------------- |
| BRENDA L. MELENDEZ, *individually and as parent and natural guardian of J.C.*, CAROLYN MASON, *individually and as parent and natural guardian of A.D.*, and NAHOKO and KENTARO MIZUTA, *individually and as parents and natural guardians of Y.M.*,<br><br>                        Plaintiffs,<br><br>– *against* –<br><br>RICHARD CARRANZA, and NEW YORK CITY DEPARTMENT OF EDUCATION,<br><br>                        Defendants. | 20 Civ. 1464 (ER)      |

Ramos, D.J.:

In a series of four related cases, the parents of children with serious brain injuries seek injunctive relief pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and related state law against Defendants New York City Department of Education (the "DOE") and its Chancellor, Richard Carranza, and the New York State Education Department. Specifically, Plaintiffs seek an order directing Defendants to fund tuition at iBrain—the school which the children currently attend and which their parents unilaterally determined was their appropriate pendency placement— while their ongoing due process complaints against Defendants are being resolved.

Before the Court are two letter motions filed in all four cases: (1) Defendants' request to dismiss the cases and to vacate two underlying administrative decisions— specifically the IHO and SRO pendency orders in impartial hearing case nos. 185096 (appeal no. 20–022) and 185108 (appeal no. 20–-41)—in light of the Second Circuit's recent decision in the tandem cases *Ventura de Paulino v. New York City Department of Education*, No. 19 Civ. 1662, and *Navarro Carrillo v. New York City Department of*

2

*Education*, No. 19 Civ. 1813, 959 F.3d 519 (2d Cir. 2020); and (2) Plaintiffs' "request that the Court find that they are entitled to injunctive relief for pendency funding at [iBrain] for both the 2018–2019 and 2019–2020 school years." *See* No. 19 Civ. 2928, Doc. 42; No. 19 Civ. 8726, Doc. 63; No. 20 Civ. 823, Doc. 35; and No. 20 Civ. 1464, Doc. 29 ("Defendants' July 17, 2020 Letter"); *see also* No. 19 Civ. 2928, Doc. 44; No. 19 Civ. 8726, Doc. 65; No. 20 Civ. 823, Doc. 37; and No. 20 Civ. 1464, Doc. 31 ("Plaintiffs' July 21, 2020 Letter").  For the following reasons, Defendants' request is GRANTED, and Plaintiffs' request is DENIED.

## I.  BACKGROUND

### A.  Statutory and Legal Background

Congress passed the IDEA "to ensure that all children with disabilities have available to them a *free appropriate public education* that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A) (emphasis added).  It defines free appropriate public education ("FAPE") as "appropriate preschool, elementary school, or secondary school education," "provided at public expense, under public supervision and direction, and without charge," and "in conformity with the individualized education program ['IEP'] required under section 1414(d) of this title."  *Id*. § 1401(9).  The statute further mandates that the FAPE "meet the standards of the State educational agency."  *Id.*

As part of a child's FAPE, "the IDEA provides for the creation of an IEP."  *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 481 (2d Cir. 2002).  The IEP includes, among other things, "a statement of the child's present levels of academic achievement and functional performance," "a statement of measurable annual goals," and "a description of how the child's progress toward meeting the annual goals . . . will be measured."  20 U.S.C. § 1414(d)(1)(A)(i).  "Congress repeatedly emphasized throughout the Act the importance and indeed the necessity of parental participation in both the

development of the IEP and any subsequent assessments of its effectiveness." *Honig v. Doe*, 484 U.S. 305, 311 (1988). As a result, states must allow parents "to seek review of any decisions they think inappropriate." *Id.* at 312.

In New York, parents may seek such review by requesting an "impartial due process hearing" before an impartial hearing officer ("IHO"). N.Y. Educ. Law § 4404(1). If they are unsatisfied with the IHO's decision, they can appeal the decision to a state review officer ("SRO"). *Id.* § 4404(2). "The SRO's decision is final[] and concludes the state administrative review." *Schutz*, 290 F.3d at 481. "Upon issuance of a final administrative decision, however, a dissatisfied party has the right to bring a civil action in either federal or state court pursuant to the IDEA." *Id.*

At issue in these cases is the IDEA's so-called "stay-put provision." The IDEA provides that, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the *then-current educational placement* of the child." 20 U.S.C. § 1415(j) (emphasis added). To determine a child's "then-current educational placement," Second Circuit courts consider: (1) "the placement described in the child's most recently implemented IEP; (2) the operative placement actually functioning at the time when the stay put provision of the IDEA was invoked; or (3) the placement at the time of the previously implemented IEP." *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015) (internal quotation marks and citations omitted).

"Parents who are dissatisfied with their child's education can unilaterally change their child's placement during the pendency of review proceedings and can, for example, pay for private services, including private schooling." *Ventura de Paulino*, 959 F.3d at 526 (internal quotation marks and citations omitted). However, the Supreme Court has held that "parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk." *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*,

4

471 U.S. 359, 373–74 (1985). After the IEP dispute is resolved, parents may obtain "retroactive reimbursement" from the school district if: "(1) the school district's proposed placement violated the IDEA by, for example, denying a FAPE to the student because the IEP was inadequate; (2) the parents' alternative private placement was appropriate; and (3) equitable considerations favor reimbursement." *Ventura de Paulino*, 959 F.3d at 526–27 (citing the so-called *Burlington-Carter* test).

### B. Factual and Procedural Background

The Court presumes familiarity with its decision in *Melendez v. New York City Dep't of Educ.* ("*Melendez I*"), 420 F. Supp. 3d 107 (S.D.N.Y. 2019). Nevertheless, the Court will restate those facts and others to the extent they are necessary to resolve the motions at hand.

Brenda L. Melendez, the parent and natural guardian of J.C., is a plaintiff in all four lawsuits, and is the only plaintiff in three of the four. J.C. is a ten-year-old boy with a brain injury and global developmental impairments. No. 19 Civ. 2928, Doc. 12 ¶ 2. As a result, J.C. cannot walk or speak and requires a high degree of attention, instruction, and intervention. *Id.* On August 29, 2016, the DOE created an IEP for J.C. *Id.* ¶ 4. For the 2016–2017 school year, he enrolled in iHope, a private school, and the DOE funded his placement. *Id.*, Doc. 12 at 2. On April 1, 2017, iHope proposed an IEP for the 2017–2018 school year. *Id.* For the 2017–2018 school year, J.C. attended iHope and received the services recommended by iHope in the 2017–2018 proposed IEP. *Id.* ¶¶ 5–6.

On November 3, 2017, Melendez filed a due process complaint against the DOE regarding the 2017-2018 school year and sought pendency funding at iHope on the grounds that the current placement was substantially similar to the program identified in the last agreed upon IEP, dated August 29, 2016. *Id.*, Doc. 12, Ex. 3 at 2. The DOE did not appear for the hearing. *Id.* On January 3, 2018, the IHO granted the request for pendency funding because "there is no dispute that the student's last agreed upon placement, funded by the Department, . . . is being substantially implemented at iHope."

5

*Id.* at 3.  More than five months later, on May 31, 2018, the IHO denied Melendez's due process complaint and Melendez appealed that decision to the SRO.  *Id.*, Doc. 12 ¶¶ 9–10.

On June 21, 2018, while the appeal was still pending, Melendez notified the DOE that she would enroll her child in iBrain for the 2018-2019 school year because the child's needs were "multifaceted and complex, and to date, the DOE has not offered a program or placement that can appropriately address his educational needs for school year 2018-2019."[1]  *Id.*, Doc. 12, Ex. 5.  A little over two weeks later, on July 9, 2018, J.C. enrolled in iBrain.  *Id.*, Doc. 12 ¶ 12.  On that very day, Melendez filed a due process complaint alleging that the DOE failed to offer the child a FAPE for the 2018-2019 school year.  *Id.*, Doc. 12, Ex .7.  She also sought pendency funding and services for the 2018-2019 school year at iBrain, based on the August 29, 2016 IEP.  *Id.* at 1–2.

The IHO held hearings on J.C.'s pendency placement on August 17, September 17, and October 30 of 2018.  *Id.*, Doc. 12, Ex. 9 at 2.  Both parties agreed that the January 3, 2018 pendency order was the basis for J.C.'s pendency.  *Id.*, Doc. 12 ¶ 17.  However, they interpreted the pendency order differently.  The DOE explained that the January 3, 2018 pendency order found that "the last agreed upon placement [wa]s the District's IEP" and that that plan "was being substantially implemented at the unilateral placement which was iHope at the time."  *Id.*, Doc. 12, Ex. 8 at 95:19–23.  The student's counsel interpreted the order more broadly and stated that pendency order found that pendency was "a private school 6:1:1 class, with that placement as being at iHope."  *Id.* at 99:4–9.

---

[1] As the Second Circuit noted in *Ventura de Paulino*, these cases present an "unusual set of facts."  959 F.3d at 528.  In other cases also concerning the transfer of students from iHope to iBrain, it "has been alleged that, during the summer of 2018, there was a split between the original founders and some of the [iHope] board over whether [iHope] should admit students with disabilities besides traumatic brain injuries and that the original founders and some of the administration were ousted from [iHope]."  *Id.* at 528–29.  An individual named Dononhue "left [iHope] and became the founder and registered agent of [iBrain]," and "also happens to be the founder of the Brain Injury Rights Group, the law firm representing the Parents in these . . . cases and the other plaintiffs seeking public funding from the City for [iBrain's] tuition and related services."  *Id.* at 529.

On November 13, 2018, the IHO denied J.C.'s request for pendency funding at iBrain for the 2018-2019 school year because "[t]here is no evidence in the record that the parent ever requested any pendency relief other than funding for her unilateral placement at iBrain" and because "[t]he parent has not cited any legal authority for the proposition that a parent can unilaterally change a student's placement, and obtain public funding for that placement during the pendency of due process proceedings." *Id.*, Doc. 12, Ex. 9 at 4–5.  The IHO specifically rejected Melendez's argument that "the student is entitled to funding at iBrain, as it provides a program that is identical to (or substantially similar to) the iHope program." *Id.* at 5.

On March 9, 2019, the parties entered into an agreement to settle the appeal from the IHO's May 31, 2018 due process decision, filed when J.C. was enrolled in iHOPE. *Id.*, Doc. 12, Ex. 4.[2]  The settlement required the DOE to pay $85,000 for J.C.'s tuition expenses and related services costs for the 2017–2018 year, provided that "[t]his Agreement shall not be relied upon by any party to indicate, establish, or support the position that the School was, or comprises in whole or in part, the Student's educational program for purposes of the 'pendency' or 'stay put' provisions of the Individuals with Disabilities Education Act ('IDEA')." *Id.* ¶ 10.

On April 2, 2019, Melendez filed a complaint against the DOE for violating J.C.'s rights under the IDEA and related state law by denying him pendency funding at iBrain for the 2018–2019 school year. *Id.*, Doc. 1.  Almost two months later, on May 30, 2019, Melendez filed a motion for a preliminary injunction and the Court held a hearing on July 24, 2019.  In an Opinion and Order dated October 16, 2019, the Court held that "J.C.'s parent is entitled to reimbursement for services that J.C. received at iBrain to the extent that those services are substantially similar to the services that he received at iHope for the 2017-2018 school year." *Melendez I*, 420 F. Supp. 3d at 122 (citing *T.M. ex rel. A.M.*,

---

[2] As part of the settlement, the Parent signed a release of her claims on January 17, 2019.  19 Civ. 2928, Doc. 12, Ex. 4 at 8–9.

7

752 F.3d 145, 171–72 (2d Cir. 2014)). At the same time, "[i]f J.C. receives additional services that are not substantially similar, Melendez is not entitled to reimbursement for those services." *Id.* However, the Court found that it was not its province to determine whether the services being offered to J.C. at iBrain were substantially similar to those at iHope. *Id.* Instead, it remanded the case for further factfinding to the IHO. In particular, it instructed the IHO to issue a revised Interim Order of Pendency "addressing, among other things, what services provided by iBrain were substantially similar to those provided by iHope in the 2017–2018 school year and the difference between the cost of those services at iHope and iBrain." *Id.* at 123.

Before an administrative decision was issued in *Melendez I*, Melendez brought a new case in federal court seeking pendency funding for J.C. at iBrain for the 2019–2020 school year. *See Melendez v. Carranza, et al.*, No. 19 Civ. 8726 (ER) (S.D.N.Y.) ("*Melendez II*"). The Court stayed that case pending the outcome of the administrative decision in *Melendez I*. *Id.*, Doc. 33.

On January 13, 2020, IHO James McKeever issued a new Interim Order of Pendency for the 2019–2020 school year, finding that J.C.'s pendency placement was iBrain and directing DOE to fund the placement at iBrain until the final adjudication of the due process complaint. *Melendez v. Richard Carranza, et al.*, No. 20 Civ. 823 (ER) (S.D.N.Y.) ("*Melendez III*"), Doc. 1 ¶ 43. That decision was based on the "substantial similarity between J.C.'s current educational program at [iBrain] and J.C.'s educational program at [iHope] during the 2017–2018 school year." *Id.* On January 24, 2020, DOE sent a Notice of Intent to Seek Review with the SRO. *Id.* ¶ 46. Melendez then brought a third case in federal court seeking an order directing DOE to immediately implement IHO McKeever's Order. *Id.*, Doc. 1.

Pursuant to this Court's decision in *Melendez I*, IHO Edgar DeLeon issued a new Interim Order of Pendency for the 2018–2019 school year on January 26, 2020. *See*

*Melendez et al. v. Richard Carranza et al.*, No. 20 Civ. 1464 (ER) (S.D.N.Y.) ("*Melendez IV*"), Doc. 1 ¶ 24.  In particular, the IHO found that:

> [T]he DOE shall either reimburse the Parent or directly pay the cost of the student's continued placement and services at his current private school retroactive to the date that the Parent filed her instant [Due Process Complaint] on July 9, 2018 and receive all of the services he is entitled to pursuant to his "IEP" dated August 29, 2016.

*Id.* ¶ 25.  On February 4, 2020, DOE sent Melendez's counsel a Notice of Intention to Seek Review of IHO De Leon's decision.  *Id.* ¶ 26.  It also indicated via correspondence that it would not be implementing IHO De Leon's order while the SRO considered that appeal.  *Id.* ¶ 28.

On February 18, 2020, the Court lifted the stay in *Melendez II*.  No. 19 Civ. 8726, Doc. 44.

On February 19, 2020, Melendez commenced a *fourth* suit.  *Melendez IV*, No. 20 Civ. 1464, Doc. 1.  In that suit, she was joined by Carolyn Mason, the parent and natural guardian of A.D., and by Nahoko and Kentaro Mizuta, the parents and natural guardians of Y.M.[3]  A.D. and Y.M. are also children with brain injuries and global impairments who had attended iHope for the 2017–2018 school year.  *Id.* ¶¶ 41–45, 67–71.  Mason and the Mizutas, like Melendez, unilaterally moved their children to iBrain for the 2018–2019 school year, where they are currently still students.  *Id.* ¶¶ 46–47, 72–73.  Both parents initiated due process complaints for the 2018–2019 school year, requesting, among other things, a pendency order requiring the DOE to fund A.D.'s and Y.M.'s placement at iBrain during the pendency of the due process proceeding.  *Id.* ¶¶ 48, 74.  These requests were granted based on a finding that their placements at iBrain were substantially similar to their placements at iHope.  *Id.* ¶¶ 49, 75.  The parents then initiated due process complaints against DOE regarding the 2019–2020 school year, seeking a similar

---

[3] As disclosed only by Defendants and improperly omitted by Plaintiffs—at least one of these students, Y.M., may already have a related case before another judge in this very District.  *See Mitzuta, et al. v. New York Dep't of Educ.*, No. 19 Civ. 537 (AJN) (S.D.N.Y.).

9

pendency order for that year. *Id.* ¶¶ 51, 77. An IHO approved the pendency placement at iBrain for both students. *Id.* ¶¶ 52, 78. However, DOE informed both parents that it would not implement the IHO's order while it was considering whether to appeal. *Id.* ¶ 54, 81. All three sets of parents sought injunctive relief enforcing the underlying IHOs orders, regardless of whether DOE ultimately decided to pursue an appeal. The relevant school year for Melendez was 2018–2019; and the relevant school year for Mason and the Mizutas was 2019–2020.

On February 26, 2020, the Court denied the motion for a temporary restraining order in *Melendez IV*. *See* No. 20 Civ. 1464, Minute Entry for Feb. 26, 2020. After oral argument, the Court stayed the matter pending the Second Circuit's decision in *Ventura de Paulino*, which concerned the DOE's responsibility to fund pendency placements when a parent unilaterally moves their child to a new school—the very issue at the heart of all four of these matters. *Id.*, Minute Entry for March 5, 2020.

On March 13, 2020, the Court again stayed *Melendez II* and issued a stay in *Melendez III* for the same reasons. *See Melendez II*, No. 19 Civ. 8726, Doc. 52; *Melendez III*, No. 20 Civ. 823, Doc. 21.

On May 8, 2020, the Second Circuit issued its decision in *Ventura de Paulino*. 959 F.3d 519. On June 22, 2020, the Second Circuit denied plaintiffs' petition for a panel rehearing or for rehearing *en banc* in *Ventura de Paulino*, and did they same for *Navarro Carrillo* on July 2, 2020. On July 13, 2020 the Circuit denied plaintiffs' motion to recall and stay the mandate in *Navarro Carrilo*, and did the same in *Ventura de Paulino* on July 14, 2020.

## II.   DISCUSSION

Defendants request that the Court dismiss these cases based on the Second Circuit's decision in *Ventura de Paulino* and that it vacate the underlying administrative determinations that found pendency at iBrain because it was substantially similar to the program being implemented at iHope in 2017–2018. They maintain that *Ventura de*

10

*Paulino* rejects the "substantial similarity" standard as a basis for extending pendency status to a parents' unilateral choice of educational placement. While Plaintiffs do not contest this request as it applies to A.D. and Y.M., they argue that the *Ventura de Paulino* decision "does not foreclose a finding that the educational program J.C. received at [iBrain] during the 2018–2019 and 2019–2020 school years constitutes J.C.'s educational placement for the purposes of pendency." Plaintiffs' July 21, 2020 Letter at 1.

In *Ventura de Paulino*, the Second Circuit held that "[r]egardless of whether [iBrain's] educational program is substantially similar to that offered previously at [iHope], the IDEA does not require the City to fund the Students' program at [iBrain] during the pendency of their IEP dispute." 959 F.3d at 525. This is because "when the Parents unilaterally enrolled the Students at [iBrain], the Parent did so at their own financial risk." *Id.* In this situation, parents can *retroactively* receive reimbursement from the school district once the IEP dispute is resolved, but only if they satisfy the so-called *Burlington-Carter* test by showing that: "(1) the school district's proposed placement violated the IDEA by, for example, denying a FAPE to the student because the IEP was inadequate; (2) the parents' alternative private placement was appropriate; and (3) equitable considerations favor reimbursement." *Id.* at 526–27 (internal quotation marks and citations omitted).

Plaintiffs argue that in so holding, the Second Circuit did not explicitly reject the substantial similarity standard for determining whether a placement is appropriate for the purposes of pendency, "as that has been the standard in the Second Circuit since *Concerned Parents & Citizens for Continuing Education at Malcolm X (PS 79) v. New York City Bd. of Educ.*, 629 F.2d 751 (2d Cir. 1980)." Plaintiffs' July 21, 2020 Letter at 1. Plaintiffs are correct. However, the Second Circuit *did* explicitly reject Plaintiffs' assumption "that because a school district can move a child to a new school that offers the same general level and type of services without violating the IDEA's stay-put provision, a parent is likewise authorized to invoke the stay-put provision to require the

11

school district to pay for a new school identified by the parent so long as the new school offers substantially similar educational services." *Ventura de Paulino*, 959 F.3d at 533. In other words, while the DOE can invoke the substantial similarity standard, parents—like Plaintiffs—cannot. Because it is undisputed that Plaintiffs acted unilaterally in moving their children from iHope to iBrain, they are not, at this juncture, entitled to funding from DOE simply because the two programs were found to be "substantially similar." The Second Circuit could not have been clearer on this point.

Plaintiffs argue for the first time in their July 21, 2020 letter that because the IEP DOE offered J.C. was a public school, which "was radically different than the pendency placement to which he was entitled by law," the DOE failed "to offer J.C. a school that would maintain the status quo of his then-current educational placement." Plaintiffs' July 21, 2020 Letter at 2–3. In support of this proposition, they point the Court to the following statement made in *Ventura de Paulino*:

> We do not consider here, much less resolve, any question presented where the school providing the child's pendency services is no longer available *and* the school district either refuses or fails to provide pendency services to the child. Those circumstances are not present here. We note, however, that at least one of our sister Circuits has acknowledged that, under certain extraordinary circumstances not presented here, a parent may seek injunctive relief to modify a student's placement pursuant to the equitable authority provided in 20 U.S.C. § 1415(i)(2)(B)(iii). *See Wagner v. Bd. of Educ. of Montgomery Cty.*, 335 F.3d 297, 302–03 (4th Cir. 2003) (involving a situation in which the pendency placement was no longer available, and the school district had failed to propose an alternative, equivalent placement).

959 F.3d at 534 n.65. Plaintiffs also argue for the first time in their July 21, 2020 letter that "while [iHope] still exists, it is vastly different from the school J.C. attended nearly three years ago," meaning that "[iHope] was unavailable to J.C." during the relevant school years. Plaintiffs' July 21, 2020 Letter at 3. Plaintiffs posit that this means that "the district has failed or refused to secure or provide the legally required pendency services," and that, in this situation, "a parent need not sit idly by while the pendency

12

rights of the student and family are violated but rather may employ self-help measures, including securing the implementation of the pendency placement at a new school, where a pendency placement at the prior school is not an option." *Id.* at 3

These arguments are unavailing. These cases, as they are currently before the Court, do not present the extraordinary circumstances contemplated by *Ventura de Paulino*. Plaintiffs point to nothing in the record to suggest that iHope is not available or cannot provide J.C.'s pendency services. Nor have Plaintiffs made any showing that DOE has refused to provide him any pendency services at all. Again, "it is up to the school district, not the parent, to decide how to provide [the most-recently-agreed-upon educational program] until the IEP dispute is resolved, so long as the decision is made in good faith." *Ventura de Paulino*, 959 F.3d at 534 (internal quotation marks and citations omitted). If Melendez disagrees with the DOE's placement, she has at least three options:

> (1) The parent can argue that the school district's decision unilaterally modifies the student's pendency placement and the parent could invoke the stay-put provision to prevent the school district from doing so; (2) The parent can determine that the agreed-upon educational program would be better provided somewhere else and thus seek to persuade the school district to pay for the program's new services on a pendency basis; or (3) The parent can determine that the program would be better provided somewhere else, enroll the child in a new school, and then seek retroactive reimbursement from the school district after the IEP dispute is resolved.

*Id.* What Melendez cannot do, however, "is determine that the child's pendency placement would be better provided somewhere else, enroll the child in a new school, and then invoke the stay-put provision to force the school district to pay for the new school's services on a pendency basis." *Id.* This is exactly what Melendez is attempting to do here.

The Second Circuit's decision in *Ventura de Paulino* is dispositive of Plaintiffs' claims that they are entitled to injunctive relief ordering the DOE to fund pendency placements at iBrain, which is at the heart of all four cases at issue in this Opinion. As

13

such, the Court GRANTS Defendants' motions to dismiss *Melendez I*, *Melendez II*, *Melendez III*, and *Melendez IV*.  Also, because the two underlying administrative decisions in these cases are based on the substantial similarity standard—which does not apply when parents unilaterally change their children's placements—these orders are VACATED.

### III.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the cases is GRANTED, and Plaintiffs' motion for injunctive relief is DENIED.  The Clerk of Court is respectfully directed to terminate the following motions:  No. 19 Civ. 2928, Docs. 42 and 44; No. 19 Civ. 8726, Docs. 63 and 65; No. 20 Civ. 823, Docs. 35 and 37; and No. 20 Civ. 1464, Docs. 29 and 31.  The Clerk of Court is also respectfully directed to close all four cases.

It is SO ORDERED.

Dated:    July 24, 2020
             New York, New York

EDGARDO RAMOS, U.S.D.J.